Lynden Evans

v.

Simon Mohr et al.

153  561
79a  353
153  561
85a  99
153  561
185  397

Filed at Ottawa October 29, 1894.

1. ATTORNEY AT LAW—*right to recover for services rests on contract.*
The right of an attorney to recover for services rests upon con-
tract, either express or implied, rendering the person for whom he
acts liable.

2. SAME—*bound by contract of attorney in fact who employs him.* An
attorney at law, knowing that an attorney in fact, who employs
him upon a contingent fee to serve his principal, has no power to
bind such principal to pay attorney's fees, cannot hold such prin-
cipal for the value of services rendered, though such principal
secretly settles the litigation without providing for payment.

3. SAME—*paying other counsel for service in same matter, no estoppel.*
The paying by such principal of other counsel employed, under a
distinct contract, upon the same matter by such attorney in fact,
does not work an estoppel to deny liability.

*Evans v. Mohr*, 42 Ill. App. 225, affirmed.

APPEAL from the Appellate Court for the Second Dis-
trict;—heard in that court on appeal from the Circuit
Court of LaSalle county; the Hon. DORRANCE DIBELL,
Judge, presiding.

The opinion of the Appellate Court, by CARTWRIGHT,
J., was as follows:

"This was a suit by appellant, commenced by attach-
ment against appellees, who reside in Germany, to re-
cover the value of services alleged to have been rendered
for appellees by appellant, as their attorney. The case
was tried by the court without a jury, and there was
judgment for appellees for costs.

"The facts, as developed on the trial, are substantially
as follows: In February, 1887, Elizabeth B. F. Reddick
died intestate, leaving an estate of $30,000 or more, and
leaving as her heirs, her brother, John Funk, and the
appellees, descendants of a deceased half sister. On the
petition of John Funk, who swore that he was the only

153—36

heir · of the decedent, George W. Armstrong was appointed administrator of her estate by the probate court of LaSalle county, and the . administration proceeded until Funk obtained, through orders of the probate court, all the personal estate. Funk knew of the German heirs, and having obtained the estate through the administration, sent an agent, named Wesseling, to Germany, and obtained, through his agency, a release or transfer of their interest in the estate for $1500, by means of ·fraud. The purchase and the existence of these heirs, who were entitled to one-half of the estate, was not made known to the probate court, which still had jurisdiction of the administration.

"Daniel Evans was judge of the probate court, and had been sued by Funk. During the pendency of that suit Judge Evans discovered, from the records of his court, that there were other heirs in Germany of the Reddick estate. With this information he went to Chicago and called on his son, the appellant, who was a practicing lawyer, and a member of the firm of Barnum, Evans · & Barnum. The senior member of the firm, William H. Barnum, was then in Europe, and appellant cabled him to wait for a letter, wherein he gave Barnum the information and asked him to investigate. This was done, as appellant testified, primarily for the purpose of ascertaining whether Funk was a perjurer, and at the same time, if Barnum was willing, he could do something for the defrauded heirs.ʺ Barnum visited appellees, and obtained from them a power of attorney to collect and receive their share of the estate, with full power 'to bring, prosecute, conclude, and, in his discretion, to manage and control whatever suits, appeals or appellate proceedings, in law or equity, in Illinois or elsewhere,' might, in his judgment, be found necessary. At the same time, and as a ·part of the same transaction, a further instrument was executed between the same parties, referring in terms to the power of attorney, and providing that when Barnum

should realize the full amount of money or property that he should be able to recover under the power of attorney, then, after retaining the amount of all cash outlays made by him, he should keep and retain as his own, in full payment of and for his services as attorney in fact, and for all legal services he might have rendered or procured to be rendered, one-half of the remaining money or property and should distribute the other half to appellees, and in case of failure to recover at all, then he should get nothing whatever for his efforts and services nor his outlays. In consideration of this arrangement, Barnum agreed in this instrument to perform all the duties imposed upon him by the power of attorney to the best of his ability, among which were the bringing and prosecution of suits for the recovery of the inheritance.

"It is urged that the cross-examination of Barnum as to this agreement was improper. He testified to the making of the power of attorney, and, on cross-examination, was required to give the whole of the same transaction, and in this there was no error.

"When Barnum returned from Europe he showed the power of attorney and agreement to appellant, and appellant was informed of their contents and relation to each other. Barnum employed a firm of attorneys at Ottawa, Illinois, who agreed to undertake and prosecute the litigation necessary to recover the estate for a fee of $1000 in case of success, and nothing in case of failure. Appellant was also employed by Barnum as an attorney in the matter, upon an agreement for a reasonable fee in case of success and nothing unless successful, and subsequently Barnum relinquished to appellant all claim to any proceeds, and it was agreed between them that appellant should have the one-half to which Barnum would be entitled.

"There was a proceeding in the probate court and a bill in equity was filed, whereupon Funk sent his attorney to Germany, and settled with appellees for a consid-

eration of about $10,000, and an agreement to protect them against any claim by Barnum. The Ottawa firm knew nothing of the contract by which Barnum was to have one-half the estate for legal services rendered and procured, and they were the only attorneys appearing in court or of record in the matter. Funk settled their claim by paying them $600. Appellant testified that he did a great amount of work in the matter; that he drafted a bill, which was subsequently modified and filed; that he searched the recorder's office and probate court, and made copies, and translated German receipts; that he studied the laws of the German Empire in force in Rhenish Prussia, calling to his aid a doctor of laws of the University of Vienna; that he carefully examined the laws of the German Empire in the Law Institute in Chicago, but found them so badly indexed that he resorted to the French translation of the Frederician code, where he found that half sisters and half brothers inherited just as in Illinois; that he found the laws over there very seldom changed, and examined the law in regard to parish records, and found that law still more ancient than the law of inheritance, and apparently unchanged; that he studied our alien land law, and in the investigation got a copy of the last treaty between the German Empire and the United States, and, concluding that the treaty made the constitutionality of the statute a serious question, took further steps for the security of the appellees; that he studied the law of *mandamus* and of *ne exeat*, and looked up hundreds of cases in the English and American reports; that he spent one month drawing interrogatories to take depositions, and that he investigated many questions of fact as well as law, and thereby thoroughly prepared himself for the anticipated contest, which did not take place only because of the settlement.

"Doubtless, appellant acted with much zeal, and with anxious care and forethought performed services in the litigation which was ended by the settlement. His right

to recover compensation for such services from appel-
lees must, however, rest upon some contract, express or
implied, or created by law, which would render appellees
liable to him.    There was an express contract covering
the subject.    The power of attorney and the contract
were executed between the same parties, at the same
time, relating to the same subject matter, and must be
considered together in determining what the entire agree-
ment between the parties was.    The contract referred to
the power of attorney, and supplemented it by providing
for the repayment of cash outlays, and for the amount
to be paid and manner of payment for services of the
attorney in fact, both legal and otherwise, and for all
legal services procured by him to be rendered.    It is clear
that the cash outlays to be first deducted from the re-
ceipts did not include legal services rendered or procured
by the attorney in fact, for they are distinctly and sepa-
rately provided for.    The attorney in fact contracted
with the heirs that all legal services he procured to be
rendered should be paid for by him out of his half of the
estate.    He agreed to perform the duties assumed by the
power of attorney, to bring and prosecute suits, and, so
far as legal services were concerned, for one-half of the
estate recovered.    If appellant is subject to this con-
tract, and has no rights arising outside of it to compensa-
tion, then it is manifest that he could not recover in this
case.    The contract was with the attorney in fact, and
he was the only one to whom appellees were bound.    They
were to pay him for legal services procured to be ren-
dered, and could not be liable to different parties, under
this contract, for the same services.    Appellant saw both
the power of attorney and contract before his employ-
ment.    He knew what the whole agreement was, both
from the papers and from his partner who employed him.
Appellant testified, that when he suggested various law-
yers at Ottawa, his partner told him that he did not want
to spend all of his half if he could help it, and wanted to

make a contract with the Ottawa firm for a contingent fee. Appellant was to have nothing except in case of success, and subsequently was to have whatever profit there was in the contract. His employment was under the contract, with notice of what it was, and there is therefore no question in the case of apparent authority to employ counsel at the expense of appellees without notice of the actual agreement. There was nothing that could give appellant any rights outside of the contract. There is no direct evidence that appellees knew that he was doing anything in the case, but if they did, they knew that the attorney in fact, his partner, was to pay for such services procured to be rendered, and had a right to presume that they were being rendered in accordance with that agreement. Such knowledge, if it existed, would not raise an implied contract on the part of appellees to pay him. *Price* v. *Hay et al.* 132 Ill. 543.

"What has been said renders it unnecessary to pass upon the question of the alleged champertous nature of the contract, inasmuch as appellant has no right under it, as against appellees, whatever its nature. The judgment will be affirmed."

Mr. LYNDEN EVANS, *pro se,* and Mr. FREDERICK ARND, for the appellant.

Messrs. DUNCAN & GILBERT, and Mr. D. B. SNOW, for the appellees.

Mr. JUSTICE BAKER delivered the opinion of the court :

It is insisted that the opinion of the Appellate Court fails to recognize the distinction between a general and special authority in an agent. Also, that both the circuit and Appellate Courts erred in holding that appellees were not estopped to deny their liability to appellant by the payment to Mayo & Widmer. The question is not as to the authority of Barnum, under his agency, to employ appellant, but of his power under that agency, viz., the

power of attorney, and the contract between himself and appellees, entered into contemporaneously with it, and of which appellant had notice, to bind appellees to pay appellant. When appellant was employed he knew that appellees, under their contract with Barnum, were not to be liable for attorney's fees, and that if anything was recovered, Barnum was to pay such fees out of his half of the proceeds. If nothing was recovered, Barnum might still be liable out of his personal funds, and would be so liable unless he protected himself by a special contract, but appellees were liable in no event under that contract of agency. Suppose no settlement had been made by the attorney of Funk with appellees, and the suits in LaSalle county had proceeded to final judgment; would it have been claimed by appellant that appellees were liable to pay him? Certainly not. If there is any liability, then, in this action, it must result from some act or conduct of appellees outside of the employment by Judge Barnum.

The position that appellees are estopped to question their liability to pay appellant because they paid Mayo & Widmer is wholly untenable. The doctrine of estoppel can have no possible application to the case. The question here is, as said by the Appellate Court, whether there was a contract, express or implied, between the parties. Paying other counsel employed under an entirely distinct contract in no way tended to prove such a contract. Counsel for appellant, in their argument, seem to lose sight of the fact that he is seeking to recover in a court of law in an action *ex contractu.*

We think the legal questions raised on this record are met and properly decided in the opinion of the Appellate Court, and its judgment will be affirmed.

*Judgment affirmed.*